1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
SKYE RESENDES (278511)
*skye@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Phone: (619) 696-9006
Fax: (619) 564-6665

*Counsel for Plaintiffs and the Proposed Class*

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERCEDES TAKETA and MICHELLE FINE, on behalf of themselves, all others similarly situated and the general public,<br><br>               Plaintiffs,<br><br>       v.<br><br>WAL-MART STORES, INC., a Delaware Corporation,<br><br>           Defendant. | Case No:<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br><br>• **CALIFORNIA UNFAIR COMPETITION LAW;**<br>• **CALIFORNIA FALSE ADVERTISING LAW;**<br>• **CALIFORNIA CONSUMERS LEGAL REMEDIES ACT;**<br>• **FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT.**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Mercedes Taketa and Michelle Fine, on behalf of themselves, all others similarly situated, and the general public, by and through their undersigned counsel, hereby sue Defendant Wal-Mart Stores, Inc. ("Defendant" or "Wal-Mart"), and alleges the following upon their own knowledge, or where they lack personal knowledge, upon information and belief and the investigation of their counsel.

## INTRODUCTION

1.     Wal-Mart markets and sells herbal supplements under the generic brand name "Spring Valley."  Defendant's supplement products include Spring Valley Gingko Biloba and Spring Valley St. John's Wort ("the Products.")

2.     Defendant falsely markets and sells the Spring Valley Gingko Biloba Supplement as being able to provide "memory support." According to product's label, "Scientific Research Documents The Ability of Ginkgo to Maintain Peripheral Circulation to The Arms, Legs and Brain. In Addition Ginkgo Helps Improve Memory, Especially Occasional Mild Memory Problems Associated With Aging. Ginkgo Also Possesses Antioxidant Properties That May Help Neutralize Cell-Damaging Free Radicals." Plaintiff Taketa saw and relied on these labeling claims when purchasing the Spring Valley Gingko Biloba product.

3.     Defendant also falsely markets and sells the Spring Valley St. John's Wort supplement as being able to provide "mood health." According to the product's label, "Spring Valley Standardized Extract St. John's Wort Herbal Supplement Capsules help promote a positive mood and a healthy emotional balance." Plaintiffs saw and relied on these labeling claims when purchasing the Spring Valley St. John's Wort Product.

4.     Wal-Mart's advertising claims are false and misleading because **the Spring Valley supplements do not contain <u>any</u> Gingko Biloba or St. John's Wort and are actually adulterated with potentially harmful, undisclosed ingredients**.

5.     On February 2, 2015, the Attorney General of the State of New York sent Wal-Mart's President and CEO a cease and desist letter demanding that Wal-Mart stop selling

1

adulterated and mislabeled herbal supplements. Wal-Mart was notified that "six popular Walmart 'Spring Valley' brand dietary supplement products were purchased at three different New York State locations and were then genetically tested five times per sample, yielding 90 results."

6.     The New York Attorney General concluded that Wal-Mart's Spring Valley Gingko Biloba tested "negative" because "No gingko biloba DNA was identified" in the product.   Wal-Mart was then informed that "the only DNA identified was 'oryza' (commonly known as rice) in 6 of the fifteen tests, with other tests identifying dracaena (a tropical houseplant), mustard, wheat, and radish"— none of which are disclosed as ingredients on the product's label. Moreover, the Attorney General's investigation concluded that "four of the tests revealed no plant DNA whatsoever."

7.     Wal-Mart's Spring Valley St. John's Wort product did not fare any better. The Attorney General determined that the product tested "negative" because "No St. John's Wort DNA was identified." Wal-Mart was further informed that "Of the 15-tests performed, only four identified any DNA, and it included allium, oryza (x2) and cassava (garlic, rice, and tropical root crop)" — none of which are disclosed as ingredients on the product's label.

8.     The New York Attorney General's findings confirmed what consumer advocacy groups have been saying for years about herbal supplements such as Spring Valley— major retailers like Wal-Mart are "not providing the public with authentic products without substitution, contamination, or fillers."

9.     Even if the Spring Valley supplements did actually contain Gingko biloba or St. John's wort (they do not), the Products would still be falsely and deceptively labeled.

10.    All available, reliable, scientific evidence demonstrates that Ginkgo biloba products have no efficacy at all, are ineffective in the improvement of cognitive health, and provide no benefits related to increasing the memory and healthy functioning of consumers' brains. Numerous scientifically valid studies, performed by independent researchers and

2

published in reputable medical journals have been conducted on the Ginkgo biloba products. These studies have universally demonstrated that the supplement has absolutely no scientific value in the improvement of brain function, treatment of memory problems or cognitive health.

11.    Moreover, all available, reliable, scientific evidence demonstrates that St. John's wort products have no efficacy at all, are ineffective in the improvement of mood and memory, and provide no benefits related to cognitive function. Numerous scientifically valid studies, performed by independent researchers, published in reputable medical journals have been conducted on the St. John's Wort products, and they have universally demonstrated that the supplement has absolutely no scientific value in the improvement of brain function, treatment of mood problems or cognitive health.

12.    Plaintiffs bring this action challenging Wal-Mart's claims relating to the Spring Valley Gingko Biloba Supplement and the Spring Valley St. John Wort Supplement on behalf of themselves and all others similarly situated. Plaintiff Taketa is asserting claims under California's Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act. Additionally, Plaintiff Fine is asserting claims under the Florida Deceptive and Unfair Trade Practices Act.

13.    Plaintiffs seeks an order compelling Wal-Mart to (1) cease marketing the Products using the misleading tactics complained of herein, (2) conduct a corrective advertising campaign, (3) restore the amounts by which Defendant has been unjustly enriched, and to (4) destroy all misleading and deceptive materials.

## JURISDICTION & VENUE

14.    The Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act, because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and because more than two-thirds of the members of the class reside in states other than the state in which Defendant resides.

3

15.    Personal jurisdiction is derived from the fact that Defendant conducts business within the State of California and within this judicial district.

16.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District because Plaintiff Taketa purchased the products in this District. Moreover, Defendant resides in this district, is authorized to conduct business in this District, has intentionally availed itself of the laws and markets of this District through the promotion, marketing, distribution, and sale of the Products in this District; and is subject to personal jurisdiction in this District.

## PARTIES

17.    Plaintiff Mercedes Taketa is a resident of Livermore, California. Plaintiff Taketa purchased Wal-Mart's Spring Valley Gingko Biloba and St. John Wort on several occasions beginning in or around January of 2011.

18.    Plaintiff Michelle Fine is a resident of Cooper City, Florida. Plaintiff Fine purchased Wal-Mart's Spring Valley St. John's Wort product in or around June of 2014.

19.    Defendant Wal-Mart Stores, Inc. is a Delaware corporation that maintains its principal place of business in Little Rock, Arkansas. Defendant is registered to do business in the State of California as entity number C1634374. Defendant conducts continuous and systematic business in this judicial district as to essentially render it at home in this judicial district.

## FACTUAL ALLEGATIONS

### Spring Valley Gingko Biloba

20.    Wal-Mart has distributed, marketed, and sold the Spring Valley Gingko Biloba product on a nationwide basis, both online and at its retail store locations. Spring Valley Gingko Biloba is available in a bottle of 90 capsules and retails for approximately $8.00.

21.    The label of the Spring Valley Gingko Biloba supplement claims that product can be used for "memory support" and contains a "standardized extract" of "120 mg per capsule" of "Gingko Biloba." The label further states that "Scientific Research Documents

4

The Ability of Ginkgo to Maintain Peripheral Circulation to The Arms, Legs and Brain. In Addition Ginkgo Helps Improve Memory, Especially Occasional Mild Memory Problems Associated With Aging. Ginkgo Also Possesses Antioxidant Properties That May Help Neutralize Cell-Damaging Free Radicals." These statements are false and misleading for the reasons described herein.



22.     The Spring Valley Gingko Biloba supplement does not actually contain any Gingko Biloba as indicated by recent scientific tests conducted by the New York Attorney General's Office.

23.     Even if the Spring Valley Gingko Biloba product did actually contain Gingko Biloba (it does not), Wal-Mart's labeling claims are still false and misleading.

*Taketa et al. v. Wal-Mart Stores, Inc.*
COMPLAINT

24.     Three separate meta-studies on Gingko biloba published in 2002, 2007, and 2012 evaluated all known published credible human scientific studies.[1] The studies uniformly conclude Ginkgo biloba supplements have no positive effect on cognitive functions in healthy individuals.[2]

    a.    In 2002, PH Canter and E. Ernst published "Ginkgo biloba: a smart drug? A systematic review of controlled trials of the cognitive effects of ginkgo biloba extracts in healthy people" in the University of Exeter Psychopharmacology Bulletin.[3] The meta-study evaluates data in six computerized databases for placebo-controlled, double-blind trials of the effect of standardized Ginkgo biloba extracts on cognitive function in healthy subjects. The study concludes "[t]he use of Ginkgo biloba as a "smart" drug cannot be recommended on the basis of the evidence available to date, and there is a particular need for further long-term trials with healthy subjects."[4]

    b.    In 2007, PH Canter and E. Ernst published an update to their 2002 study titled, "Ginkgo biloba is not a smart drug: an updated systematic review of randomized clinical trials testing the nootropic effects of G. biloba extracts

---

[1] A meta-analysis contrasts and combines results from different studies in an attempt to identify  patterns among study results, sources of disagreement, and other relationships between the studies.

[2] K. R. Laws et al., UK, *Is Ginkgo biloba a cognitive enhancer in healthy individuals? A meta- analysis*, 27 Human Psychopharmacology 527, (2012), available at http://dx.doi.org/10.1002/hup.2259.

[3] PH Canter & E. Ernst, *Ginkgo biloba: a smart drug? A systematic review of controlled trials of the cognitive effects of ginkgo biloba extracts in healthy people*, 36 Psychopharmacol Bulletin 108, (2002), available at http://www.ncbi.nlm.nih.gov/pubmed/12473969.

[4] *Id.*

6

in healthy people."[5]  The 2007 meta-study reviews available research added to the then-existing data set from the previous 2002 meta-study. Canter and Ernst conclude; "[t]he collated evidence from 15 randomized clinical trials provides no convincing evidence that G. biloba extracts ingested either as a single dose or over a longer period has a positive effect on any aspect of cognitive performance in healthy people under the age of 60 years."[6]

   c.   In 2012, K. Laws, H. Sweetnam and T. Kondel published a meta-study titled "*Is Ginkgo biloba a cognitive enhancer in healthy individuals? A meta-analysis*" in the journal of Human Psychopharmacology at the University of Hertfordshire, UK.[7] This meta-study, similar to the aforementioned meta-studies of 2002 and 2007, gathered data from all relevant credible studies on Ginkgo biloba's effect as a cognitive enhancer. Here, the authors emphasize, "[g]iven that G. biloba is marketed worldwide as a memory enhancer or touted to at least 'maintain memory', it is crucial to establish the validity for such claims."[8] This meta-study concludes "[g]. biloba has no significant impact on memory, executive function or attention with all effect sizes nonsignificant and effectively at zero."[9] Further, "we found no evidence that G. biloba improves memory, executive or attention functioning in healthy individuals."[10]

---

[5] PH Canter & E. Ernst, *Ginkgo biloba is not a smart drug: an updated systematic review of randomized clinical trials testing the nootropic effects of G. biloba extracts in healthy people*, 22  Human Psychopharmacology 265, (2007), available at http://dx.doi.org/10.1002/hup.843.

[6] *Id.* at 277.

[7] Laws, et al., *supra* note 7.

[8] *Id.*

[9] *Id.*

[10] *Id.*

*Taketa et al. v. Wal-Mart Stores, Inc.*
COMPLAINT

25.    Overwhelmingly, the consensus of reliable scientific studies concludes Ginkgo biloba supplements do nothing to enhance memory or cognitive abilities in healthy adults.

a.    A 2002 study conducted by P. Solomon, PhD and published in the Journal of the American Medical Association titled "G*inkgo for Memory Enhancement*," studied the effects of over-the- counter Ginkgo biloba products in 203 subjects in a six-week randomized, double-blind, placebo-controlled, parallel group trial.[11] Solomon and co-researchers conclude "[t]he results of this 6-week study indicate that ginkgo did not facilitate performance on standard neuropsychological tests of learning, memory, attention and concentration or naming and verbal fluency in elderly adults without cognitive impairment."[12] The authors found, "[t]he ginkgo group also did not differ from the control group in terms of self-reported memory function or global rating by spouses, friends, and relatives. These data suggest that when taken following the manufacturer's instructions, ginkgo provides no measurable benefit in memory or related cognitive function to adults with healthy cogitative function."[13] Solomon notes, "[d]espite the manufacturer's claims of improved memory in healthy adults, we were unable to identify any well-controlled studies that document this claim."[14] Solomon further concludes "this study does not support the manufacture's claims of the benefits of ginkgo on learning and memory."[15]

b.    In a 2002 article on the Cleveland Clinic Center for Continuing Education Pharmacotherapy Update, titled "*Ginkgo Biloba and Memory*," the Department of Pharmacy observe, "[d]espite the lack of well-controlled studies to support

---

[11] P. R. Solomon et al., *Ginkgo for Memory Enhancement* 288 JAMA 835, (2002), available at http://jama.jamanetwork.com/article.aspx?articleid=195207.
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*

8

the use of Ginkgo biloba leaf extract for prevention and treatment of memory impairment, ginkgo products continue to be heavily marketed and widely used."[16] The article concludes "[t]he use of ginkgo biloba leaf extract for memory impairments marketed and targeted at the healthy adult that experiences forgetfulness. Currently, the claims that Ginkgo biloba has beneficial effects on learning and memory are not supported by the literature."[17]

c.   In 2009, the Journal of the American Medical Association published the largest study to date entitled "*Ginkgo biloba for preventing cognitive decline in older adults: a randomized trial.*"[18] The 8 year study included 3069 participants aged 72-96 years. Researchers concluded that 240 mg of Ginkgo biloba extract did not result in less cognitive decline in older adults with normal cognition or with mild cognitive impairment than in the placebo control group.[19]

d.   In the 2009 study "*Ginkgo biloba for cognitive impairment and dementia,*" researchers reviewed 36 trials, nine of which were six months long (2016 participants total).[20] In the more recent and more reliable trials, three out of four found no benefits for cognitive decline.[21] Researchers concluded that while Ginkgo biloba might be safe to ingest, ". . . evidence that [it] has

---

[16] A. Popa, Pharmacology Update, *Ginkgo Biloba and Memory*, available at http://www.clevelandclinicmeded.com/medicalpubs/pharmacy/sepoct02/ginkgo.htm (last visited  Jan. 26, 2015).

[17] *Id.*

[18] B.E. Snitz et al, *Ginkgo biloba for preventing cognitive decline in older adults: a randomized  trial*, 302 JAMA 2663 (2009).

[19] *Id.*

[20] Jacqueline Birks and John Grimley Evans*, Ginkgo biloba for cognitive impairment and dementia*, Cochrane Database Systematic Review, Jan. 21, 2009.

[21] *Id.*

predictable and clinically significant benefit for people with dementia or cognitive impairment is inconsistent and unreliable."[22]

e.   In 2013, Support Care Cancer journal published "*The use of Ginkgo biloba for the prevention of chemotherapy-related cognitive dysfunction in women receiving adjuvant treatment for breast cancer*."[23] Researchers found that in 166 women, 120 mg a day for up to 12 months did not provide any evidence that Ginkgo biloba can help prevent cognitive changes from chemotherapy.[24]

f.   In 2014, the authors of "*Substances used and prevalence rates of pharmacological cognitive enhancement among healthy subjects*" studied 176 participants who ingested 120 mg daily of Ginkgo biloba over a six-month period.[25] The results indicated that there was no evidence that an average dose of Ginkgo biloba extract created any benefit in mild to moderate dementia.

26.   To date, although there are some studies that purport to claim that the ingestion of Ginkgo biloba can provide cognitive health benefits, those studies suffer severe, unmitigated scientific deficiencies, including utilizing a scientifically unreliable sample size, not utilizing scientifically sound testing procedures, and suffering from publication bias, *i.e.* the funding, publication or sponsorship of the study was provided by a party who stood to benefit from a positive finding.

27.   In addition to the lack of positive cognitive benefits, Ginkgo biloba may have negative carcinogenic effects. The National Toxicology Program ("NTP") studied the effects of Ginkgo biloba on rats and mice in small and large doses. In the *NTP Technical*

---

[22] *Id.*

[23] Debra L. Barton et al., *The use of Ginkgo biloba for the prevention of chemotherapy-related cognitive dysfunction in women receiving adjuvant treatment for breast cancer*, 21 Support Care Cancer 1185 (2013).

[24] *Id.*

[25] AG Franke et al., *Substances used and prevalence rates of pharmacological cognitive enhancement among healthy subjects*, 264 Suppl 1, Eur. Arch Psychiatry Clin. Neurosci. 83-90 (2014).

*Report on the Toxicology and Carcinogenesis Studies of Ginkgo Biloba Extract in F344/N Rats and B6C3F1/N Mice*, researchers concluded that Ginkgo biloba extract causes cancers of the thyroid gland in male and female rats and male mice and cancers of the liver in male and female mice.[26]

28.     As a result of the serious implications of the NTP study, and the lack of scientific evidence supporting safe use and positive effects of Ginkgo biloba, the Center for Science in the Public Interest addressed the director of the Food and Drug Administration ("FDA"), emphasizing that claims regarding Ginkgo biloba's supposed health benefits, including those related to memory and cognitive function, are false and should be stopped and imploring him to issue a directive that Ginkgo is no longer "Generally Recognized As Safe."

29.     The widespread popularity of Ginkgo biloba is simply a testament to the power of marketing rather than to any measurable brain benefits.[27]

30.     Accordingly, Wal-Mart's marketing is deceptive and misleading as the claims are specifically refuted by competent and reliable scientific evidence as set forth above.

**Spring Valley St. John's Wort**

31.     Wal-Mart has distributed, marketed, and sold the Spring Valley St. John's Wort product on a nationwide basis, both online and at its retail store locations. Spring Valley St. John's Wort is available in a bottle of 100 capsules and retails for approximately $4.00.

---

[26] Nat'l Inst. Of Health, *Technical Report on the Toxicology and Carcinogenesis Studies of Ginkgo Biloba Extract in F344/N Rats and B6C3F1/N Mice*, NTP TR 578, Publication No. 13- 5920, *available at* http://ntp.niehs.nih.gov/ntp/htdocs/lt_rpts/tr578_508.pdf.
[27] Kirk R. Daffner (ed.), Harvard Medical School, *Improving Memory – Understanding age- related memory loss*" (2012)("Harvard Report"), at 46, *available at* http://www.health.harvard.edu/mind-and-mood/improving-memory  (last visited Jan. 26, 2015).

11

*Taketa et al. v. Wal-Mart Stores, Inc.*
COMPLAINT

32.     The label of the Spring Valley St. John's Wort supplement claims that product can be used for "mood health" and contains a "standardized extract" of "300 mg per serving" of "St. John's Wort." The label further states that "Spring Valley Standardized Extract St. John's Wort Herbal Supplement Capsules help promote a positive mood and a healthy emotional balance." Moreover, the label claims that the product does not contain "gluten, yeast, wheat, milk or milk derivatives, or lactose" and has "No sugar, preservatives, soy, artificial color, artificial flavor, or sodium." These claims are false and misleading for the reasons described herein.



*Taketa et al. v. Wal-Mart Stores, Inc.*
COMPLAINT

33.   The New York Attorney General's investigation into the Spring Valley St. John's Wort product concluded that the product does not actually contain any St. John's wort even though the label claims that it is a "standardized extract" containing "300mg per serving" of St. John's wort.

34.   Even if the Spring Valley St. John's Wort product did actually contain St. John's wort (it does not), Wal-Mart's labeling claims are still false and misleading.

35.   There are no reliable, scientific studies showing that St. John's wort has any effect on a user's mood or emotional balance.

**The Spring Valley Products Are Misbranded Dietary Supplements**

36.   Pursuant to Title 21 of the Code of Federal Regulations, Part 101.4 (21 CFR § 101.4) all dietary supplement products shall list there ingredients "by common or usual name in descending order of predominance by weight on either the principal display panel or information panel…"

37.   The Spring Valley Gingko Biloba product violates 21 CFR § 101.4 because it lists Gingko biloba as an ingredient in the product when there is actually no Gingko biloba in the product whatsoever. The Spring Valley Gingko Biloba product further violates 21 CFR § 101.4 because it contains undisclosed ingredients such as dracaena (a tropical house plant), mustard, wheat, and radish.

38.   The Spring Valley St. John's Wort product violates 21 CFR § 101.4 because it lists St. John's Wort as an ingredient in the product when there is actually no St. John's Wort in the product whatsoever. The Spring Valley St. John's Wort product further violates 21 CFR § 101.4 because it contains undisclosed ingredients such as garlic, rice, and cassava (a tropical root crop).

39.   California Health and Safety Code, Division 104, Part 5, contains the Sherman, Food, Drug, and Cosmetic Law ("Sherman Law," located at Cal. Heath & Safety Code §§ 109875-111915). The Sherman Law imposes identical requirements to the federal FDCA.

40.   The Sherman Law is explicitly authorized by the FDCA. 21 U.S.C. § 343-1.

13

41.     Plaintiffs and the members of the Class would not have purchased the Products if it were known to them that the Products are misbranded pursuant to FDA and California regulations.

## CLASS ACTION ALLEGATIONS

42.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23.  Plaintiff Taketa seeks to represent the following class:

**The California Class**

All consumers within the State of California, and states with similar consumer protection laws, who purchased the Spring Valley Gingko Biloba and St. John's Wort Products during the applicable statute of limitations period for their personal use, rather than for resale or distribution. Excluded from the California Class are Defendants' current or former officers, directors, and employees; counsel for Plaintiffs and Defendants; and the judicial officer to whom this lawsuit is assigned.

43.     Plaintiff Fine seeks to represent the following class:

**The Florida Class**

All consumers within the State of Florida, and states with similar consumer protection laws, who purchased the Spring Valley St. John's Wort Product during the applicable statute of limitations period for their personal use, rather than for resale or distribution. Excluded from the Florida Class are Defendants' current or former officers, directors, and employees; counsel for Plaintiffs and Defendants; and the judicial officer to whom this lawsuit is assigned.

44.     The members in the proposed classes are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all class members in a single action will provide substantial benefits to the parties and Court.

45.     Questions of law and fact common to plaintiff and the class include:

      A.     whether Defendant contributed to, committed, and/or is responsible for the conduct alleged herein;

*Taketa et al. v. Wal-Mart Stores, Inc.*
COMPLAINT

B.   Whether Defendant's conduct constitutes the violations of law alleged herein;

C.   Whether Defendant acted willfully, recklessly, negligently, or with gross negligence in the violations of law alleged herein; and

D.   Whether Class members are entitled to injunctive, and/or other equitable relief;

46.   Plaintiffs' claims are typical of class members' claims in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

47.   Absent Defendant's deceptive claims, Plaintiff and the Class members would not have purchased the Products.

48.   Plaintiffs will fairly and adequately represent and protect the interests of the classes, have no interests incompatible with the interests of the classes, and have retained counsel competent and experienced in class action litigation.

49.   The classes are sufficiently numerous, as the classes contain at least hundreds of thousands of members who purchased the Spring Valley Products in multiple states across the United States.

50.   Class treatment is superior to other options for resolution of the controversy because the relief sought for each class member is small such that, absent representative litigation, it would be infeasible for class members to redress the wrongs done to them.

51.   Questions of law and fact common to the class predominate over any questions affecting only individual class members.

52.   Defendant has acted on ground applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

53.   As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

*Taketa et al. v. Wal-Mart Stores, Inc.*
COMPLAINT

# FIRST CAUSE OF ACTION

## Violations of the Unfair Competition Law, Unlawful Prong

### Cal. Bus. & Prof. Code § 17200 *et seq.*
### (By the California Class)

54.     Plaintiff Taketa realleges and incorporates the allegations elsewhere in the Complaint as set forth in full herein.

55.     California Business and Professional Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

56.     The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "unlawful" business acts and practices in that Defendant's conduct violates the False Advertising Law, the Consumer Legal Remedies Act.

57.     Defendant's conduct is further "unlawful" because it violates the FDCA and its implementing regulations in the following ways:

a.  Defendant's deceptive statements violate 21 U.S.C. §§ 343(a) and 352, which deem a food or drug (including nutritional supplements) misbranded when the label contains a statement that is "false or misleading in any particular";

b.  Defendant's deceptive statements violate 21 C.F.R. § 101.14(b)(3)(i), which mandates "substances" in dietary supplements consumed must contribute and retain "nutritive value," as defined under 21 C.F.R. § 101.14(a)(2)(3) when consumed at levels necessary to justify a claim;

c.  Defendant's deceptive statements violate 21 CFR § 101.4 because the Products' ingredients' list contain ingredients that are not actually found in the products. Moreover, the products contain ingredients that are not disclosed on the ingredients list.

58. Defendant's conduct is further "unlawful" because it violates the California Sherman Food, Drug, and Cosmetic Law, *see* Cal. Health & Safety Code § 109875-111900, which incorporates the provisions of the FDCA. *See id.* §§ 110110-110115.

59. Defendant profited from its sales of the falsely, deceptively, or unlawfully advertised Product to unwary consumers.

60. In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

## SECOND CAUSE OF ACTION

### Violations of the Unfair Competition Law, Unfair and Fraudulent Prongs

### Cal. Bus. & Prof. Code § 17200 *et seq.*
### (By the California Class)

61. Plaintiff Taketa realleges and incorporates the allegations elsewhere in the Complaint as set forth in full herein.

62. California Business and Professional Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

63. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein also constitute "unfair" business acts and practices under the UCL in that Defendant's conduct is immoral, unscrupulous, and offends public policy by seeking to profit from male vulnerability to false or deceptive virility or aphrodisiac claims. Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

64. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "fraudulent" business acts and practices under the UCL in that Defendant's claims are false, misleading, and have a tendency to deceive the Class and the general public, as detailed herein.

65.   Defendant profited from its sales of the fraudulently, falsely and deceptively advertised Product to unwary consumers.

66.   In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

67.   Plaintiff further seeks an order for the disgorgement and restitution of all profit earned from the sale of the Defendant's Products, which were acquired through acts of unlawful, unfair, and/or fraudulent competition by Defendant.

## THIRD CAUSE OF ACTION

### Violations of the False Advertising Law,

### Cal. Bus. & Prof. Code § 17500 *et seq.*
### (By the California Class)

68.   Plaintiff Taketa realleges and incorporates the allegations elsewhere in the Complaint as set forth in full herein.

69.   In violation of California Business and Professional Code § 17500 *et seq.*, the advertisements, labeling, policies, acts, and practices described herein were designed to, and did, result in the purchase and use of Spring Valley Gingko Biloba and St. John's Wort products.

70.   Defendant knew and reasonably should have known that the labels on Defendant's Products were untrue and/or misleading.

71.   Defendant profited from its sales of the falsely and deceptively advertised Product to unwary consumers.

72.   As a result, Plaintiff Taketa, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendants were unjustly enriched.

///

///

*Taketa et al. v. Wal-Mart Stores, Inc.*
COMPLAINT

## FOURTH CAUSE OF ACTION

### Violations of the Consumer Legal Remedies Act,

### Cal. Civ. Code § 1750, *et seq.*

73.    Plaintiff Taketa realleges and incorporates the allegations elsewhere in the Complaint as set forth in full herein.

74.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

75.    Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of Defendant's Product for personal, family, or household purposes by Plaintiff and class members, and violated and continue to violate the following sections of the CLRA:

   a.    § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

   b.    § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

   c.    § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

   d.    § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

76.    Defendant profited from its sales of the falsely, deceptively and unlawfully advertised Product to unwary consumers.

77.    As a result, Plaintiff and the Class have suffered irreparable harm.

78.    Defendant's wrongful business practices regarding the Product constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendant is still representing that the Product has characteristics, uses, benefits, and abilities which are false and misleading, and have injured Plaintiff and the Class.

79.    Plaintiff Taketa and the class seek equitable relief for their CLRA claims.

19

**FIFTH CAUSE OF ACTION**

**Violations of the Florida Deceptive and Unfair Trade Practices Act,**

**Fla. Stat. Ann. §§ 501.201, *et seq.***

**(By the Florida Class)**

80.     Plaintiff Fine repeats, re-alleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

81.     Plaintiff Fine brings this fifth cause of action for Defendant's violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUTPA"). The purpose of the FDUPTA is to "protect the consuming public…from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. Ann. § 501.202(2).

82.     Plaintiff Fine and the Florida Class are consumers as defined by Fla. Stat. § 501.2013. The Product is a good within the meaning of the FDUPTA. Defendant is engaged in trade or commerce within the meaning of the FDUPTA.

83.     Fla. Stat. § 501.2014(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair and deceptive acts or practices in the conduct of any trade or commerce."

84.     Fla. Stat. § 501.204(2) states that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to [section] 5(a)(1) of the Federal Trade Commission Act."

85.     Federal decisions provide that "a deceptive practice is one that is likely to mislead consumers." *Jovine v. Abbott Labs, Inc.*, 2011 U.S. Dist. LEXIS 39702, 2011 WL 1376029 (S.D. Fla. Apr. 12, 2011) (quoting *Davis v. Powertel*, 776 So.2d 971, 974 (Fla. Dist Ct. App. 2000)). The Fourth District Court of Florida has held that an unfair practice is one that "offends established public policy and one that is immoral, unethical oppressive, unscrupulous, or substantially injurious to consumers." *Yachting Promotions, Inc. v. Broward Yachts, Inc.*, 792 So.2d 600, 664 (Fla. 4th DCA 2001).

86.    Defendant's unfair and deceptive practices are likely to mislead, and have mislead, Plaintiff and Class members who purchased the Spring Valley St. John's Wort Product.

87.    Further, Defendant has violated the FDUPTA by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

88.    Plaintiff Fine and the Class have been aggrieved by Defendant's unfair and deceptive practices in that they paid for the Spring Valley St. John's Wort product, but the Product was not as represented to them.

89.    The damages suffered by Plaintiff Fine and the Florida Class were directly and proximately caused by the deceptive and unfair practices of the Defendant, as more fully described above.

90.    Pursuant to Fla. Stat. § 501.211(1), Plaintiff and the Class seek a declaratory judgment and a court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

## PRAYER FOR RELIEF

98.    Wherefore, Plaintiffs, on behalf of themselves, all others similarly situated and the general public, pray for judgment against Defendant as to each and every cause of action, and the following remedies:

A.    An Order declaring this action to be a proper class action and appointing undersigned counsel as class counsel;

B.    An Order requiring Defendant to bear the cost of class notice;

C.    An Order compelling Defendant to conduct a corrective advertising campaign;

D.    An Order requiring Defendant to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

*Taketa et al. v. Wal-Mart Stores, Inc.*
COMPLAINT

E.     An Order compelling Defendant to destroy all misleading and deceptive advertising materials and Product labels;

F.     An Order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, plus pre-and post-judgment interest thereon;

G.     Any other and further relief that Court deems necessary, just, or proper.

### JURY DEMAND

Plaintiffs hereby demands a trial by jury on all issues so triable.


Dated: February 4, 2015             /s/ Ronald A. Marron
                                    **LAW OFFICES OF RONALD
                                    A. MARRON**
                                    RONALD A. MARRON
                                    *ron@consumersadvocates.com*
                                    651 Arroyo Drive
                                    San Diego, CA 92103
                                    Phone: (619) 696-9006
                                    Fax: (619) 564-6665

                                    ***Attorney for Plaintiffs and the
                                    Proposed Class***

*Taketa et al. v. Wal-Mart Stores, Inc.*
COMPLAINT